IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 1:05-CR-0423 |
| v. | JUDGE SYLVIA H. RAMBO |
| SHANNON M. SILKNITTER, | |
| Defendant. | |

**M E M O R A N D U M**

Before the court is Defendant Shannon M. Silknitter's Motion to Suppress Statements Taken After Invocation of Fifth Amendment Right to Counsel (Doc. 57). The parties have briefed the issue and the court conducted a hearing on March 27, 2006; thus, the matter is ripe for disposition. For the reasons that follow, the court will grant the motion.

**I.    Background**

The York Area Regional Police arrested Defendant on October 20, 2005, in connection with explosions and related events that occurred at private residences in York County, Pennsylvania between October 18-20, 2005.[1] At about 3:00 p.m. on October 20, 2005, the police questioned Defendant at the York Area Regional Police Headquarters. At the time of the questioning and arrest, Defendant had been eighteen for about three months. A portion of Defendant's conversation with Detective Hopple and Agent Culp was recorded on video.

---

[1] Stephen Beck, Zachary Beck, and Megan Anthony had also been taken into custody. They admitted to their involvement in the incidents and identified Defendant as a fellow participant.

After obtaining preliminary background information from the Defendant, at about 3:14 p.m. Detective Hopple indicated that when the police had previously advised Defendant of his rights Defendant had said that he understood them. Detective Hopple said he had subsequently been told that Defendant had asked about having an attorney present. Detective Hopple stated that he had asked Defendant prior to questioning whether he wanted to exercise his right to have an attorney present, but that Defendant had said that he would talk to Detective Hopple. Detective Hopple then indicated that he was going to advise Defendant of his rights again to make sure that Defendant understood the rights and to verify whether he wanted an attorney at that time. Defendant said, "Okay."

Detective Hopple then stated that the Defendant was a suspect, then reviewed the charges with him and gave Defendant his *Miranda*[2] warnings. Defendant indicated that he understood his rights. The following conversation occurred:[3]

> Detective Hopple: Earlier you had indicated that at some point you wanted to speak with an attorney, okay? Do you want to speak with an attorney prior to speaking with us here today?
>
> Defendant: I will give you that information [garbled] but I don't want to get myself into a wall. So I will tell you what I know and what I seen.
>
> Detective Hopple: I'm not sure that I'm following you.
>
> Defendant: Personally, me and Steve did not have a big part in this.

---

[2] *Miranda v. Arizona*, 384 U.S. 463 (1966).

[3] The above transcript was not prepared by a certified court reporter. However, the court believes that it accurately reflects Defendant's recorded conversation with Detective Hopple and Agent Culp on October 20, 2005 and that errors, if any, do not affect the substance of the conversation.

Detective Hopple: Well, hold on a second here. Let's back up. I don't want you to tell me, okay? I want to make sure that you understand your rights.

Defendant: Yes.

Detective Hopple: You do?

Defendant: Yes.

Detective Hopple: Now, the question is, you have indicated that you want to speak to an attorney at some point, but then you followed up by saying, no, you wanted to talk to me first. Is that correct?

Defendant: Maybe I should just be better if I waited for an attorney.

Detective Hopple: Do you want to speak with an attorney before you talk with us?

Defendant: Yeah.

Detective Hopple: All right, then. What we're going to do is we're just going to stop right now. That's a right afforded you under the law. It can't be held against you, all right? What we're going to ask you to do is obtain an attorney and like I said, if you can't afford one, the court will appoint you one. Okay? And we would obviously still like to meet with you to get your side of the story. It's not our intent to come listen to you tell us lies. If you're going to tell us lies, I think I would just as soon you didn't talk to me. Everybody else has told everything. I'll tell you that. And we were hoping you would do the same. Okay?

Defendant: And what would that do for me?

Detective Hopple: Well, obviously, when you come in and cooperate in a police investigation, whether it be the police or the feds, okay, it can make things a little easier down the road.

Defendant: Let me ask you this. What happened at that girl's house, that is not pointed at me that I lit that?

Detective Hopple: Again, you asked for an attorney.

>Agent Culp: What I told you before Detective Hopple came by . . .
>
>Defendant: I was just there.
>
>Agent Culp: . . . well, listen. What I told you before Detective Hopple came in and I introduced myself and you asked me what you could do and I said the best thing for you to do is just be honest. So when you get with your attorney, you need to be honest because what you don't want is to be the one guy holding the bag that everyone's pointing the finger at. And I'm not saying that that's the case but . . .
>
>Detective Hopple: I just want you to know where everyone's coming from if we're willing to sit and talk with you. You know, everyone makes mistakes and that's what happened here. Everyone here made some pretty bad mistakes. And it kinda goes to that old scenario. If you happened to have been along for the ride, you're just as guilty as the other ones. Now depending on what you did . . . now, we know that three different people told us you did so we need to listen to what you did. But like I said, I'm not interested in listening to you lie.
>
>Defendant: I'll elaborate on one item. The other ones I know . . .
>
>Detective Hopple: Well, you asked for an attorney. At this point, I think it's best you just stick to that, okay?
>
>Defendant: Well, I'll just elaborate on the one. And one is that yes, I was along for the ride. Two, I did not have any parts of the lighting of it. I was just [garbled] peer pressure [garbled]. Other than I joined in on it, but I wasn't the one being like, yeah, okay, well, I was just doing it for maybe a buddy of mine and just seeing what would happen for that case. It was a stupid idea. I wasn't the one who lit it.
>
>That's all I'm going to say. And that's the truth.

The conversation continued regarding an unrelated matter. Detective Hopple also described the booking procedure. Defendant then asked whether talking at that time or waiting for an attorney would impact the severity of the

4

charges against him. Detective Hopple and Agent Culp indicated that it would not hurt Defendant to wait to speak to an attorney.

On October 26, 2005, Defendant was indicted on five counts: 1) criminal conspiracy to possess and manufacture destructive devices, in violation of 18 U.S.C. § 371; 2) manufacture of destructive devices, in violation of 18 U.S.C. § 5861(f); 3) possession of destructive devices, in violation of 18 U.S.C. § 5861(d); 4) use of explosives to destroy mailboxes, in violation of 18 U.S.C. § 844(h); and 5) use of explosives to destroy mailboxes, in violation of 18 U.S.C. § 844(i). Defendant pleaded not guilty on November 8, 2006.

## II.      **Legal Standard**

The Fifth Amendment's protection against self-incrimination provides the foundation for well-settled procedural safeguards in custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "The concern of the Court in *Miranda* was that the 'interrogation environment' created by the interplay of interrogation and custody would 'subjugate the individual to the will of his examiner' and thereby undermine the privilege against self-incrimination." *Rhode Island v. Innis*, 446 U.S. 291, 299 (1980) (quoting *Miranda*, 384 U.S. at 457-58). However, *Miranda* warnings are required only prior to "custodial" interrogation. *California v. Beheler*, 463 U.S. 1121, 1124 (1983); *see also Steigler v. Anderson*, 496 F.2d 793, 798 (3d Cir. 1974). Thus, in order for the Fifth Amendment's safeguards to apply, a suspect must be 1) in custody and 2) subject to interrogation.[4]

---

[4] The parties do not dispute that Defendant was in custody at the time of the events in question. Therefore, the court will focus on whether the interrogation requirement is satisfied.

Not "all statements obtained by the police after a person has been taken into custody are to be considered the product of interrogation." *Innis*, 446 U.S. at 299. Confessions and voluntary statements are admissible. *Id.* at 299-300. In defining what falls within the scope of "interrogation" the Supreme Court also identified "the use of psychological ploys, such as to posit the guilt of the subject, to minimize the moral seriousness of the offense, and to cast blame on the victim or on society." *Id.* (internal quotations omitted).

"Interrogation" must "reflect a measure of compulsion above and beyond that inherent in custody itself." *Id.* at 300. "[T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Id.* at 301. Words or actions constitute the functional equivalent of questioning when "the police should know [that they] are reasonably likely to elicit an incriminating response from the subject." *Id.* Moreover, the determination of what is "reasonably likely to elicit an incriminating response" turns "upon the perceptions of the subject rather than the intent of the police." *Id.* However, this standard is restricted to what the police "*should have known* [was] reasonably likely to elicit an incriminating response" so that police are not accountable for unforeseeable results. *Id.* at 301-02.

**III.      Discussion**

The instant dispute turns on whether Defendant invoked his *Miranda* right to counsel, and if so, whether he subsequently waived that right. The parties do not appear to dispute that the police interrogated Defendant while he was in custody; however, considerations of what constitutes interrogation and when

interrogation of the Defendant occurred inform the court's inquiry into the relevant issues.

### A. Request for Counsel

Defendant invoked his right to counsel when he unequivocally responded, "Yeah," to Detective Hopple's question, "Do you want to speak with an attorney before you talk with us?" "Invocation of the *Miranda* right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *Davis*, 512 U.S. 452, 459 (1994) (internal quotations omitted). A suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* This rule does not apply where a suspect makes an ambiguous or equivocal statement. *Id.*

Although the taped conversation indicates that Defendant had discussed having counsel present earlier, it fails to clearly establish that Defendant had clearly and unequivocally invoked his right to counsel at that time. Detective Hopple first stated that he understood Defendant's earlier statements to have been questions about having counsel present or that Defendant wanted to have counsel present "at some point." Defendant did not object to or otherwise contradict Detective Hopple's characterization of Defendant's earlier statements. Therefore, the court finds that as of the time of the recorded meeting Defendant had not unambiguously invoked his Fifth Amendment right to counsel.

Moreover, Defendant failed to clearly invoke his right to counsel in his initial exchanges with Detective Hopple during the taped meeting. His statement,

7

"Maybe I should just be better if I waited for an attorney," does not constitute a clear and unequivocal request for counsel. *See id.* at 462 (holding that the remark "Maybe I should talk to a lawyer" was not an unambiguous request for counsel). However, Defendant's response, "Yeah," when Detective Hopple's asked if he wanted an attorney was sufficient to unambiguously invoke his request for counsel. That was the point at which interrogation should have ceased, unless Defendant subsequently waived his right to counsel.

### B. Impermissible Interrogation

Having determined that Defendant clearly invoked his right to counsel, because the taped conversation continued for a period of time afterwards, the court must also determine whether interrogation continued and if so, whether it was permissible. Once a suspect receives his *Miranda* warnings, law enforcement officers are free to question him only if he "effectively waives his right to counsel." *Id.* at 458. Moreover, once a defendant has indicated that he wishes to exercise his right to counsel during custodial interrogation, he may not be "subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Oregon v. Bradshaw*, 462 U.S. 1039, 1043 (1983). "Determining whether particular statements or practices amount to interrogation depends on the circumstances of each case, particularly whether the statements are objectively and reasonably likely to result in incriminating responses by the suspect, as well as the nature of the police statements and the context in which they are given." *United States v. Allen*, 247 F.3d 741, 765 (8th Cir. 2001), *vacated and remanded on*

*unrelated sentencing grounds*, *cited with approval in United States v. Oppong*, No. 03-4112, 2006 WL 197162, at *4 (3d Cir. Jan. 26, 2006).

The court finds that at least a portion of the conversation that occurred immediately after Defendant exercised his rights constituted interrogation. Detective Hopple's initial comments were permissible:

> All right, then. What we're going to do is we're just going to stop right now. That's a right afforded you under the law. It can't be held against you, all right? What we're going to ask you to do is obtain an attorney and like I said, if you can't afford one, the court will appoint you one. Okay?

Detective Hopple was simply telling the Defendant what the next procedural steps would be. *See Allen*, 247 F.3d *at 765* (Even where a defendant has invoked his right to counsel, informing the defendant of the results of a line-up, otherwise describing the "status of the ongoing investigation, or even providing "mere declaratory descriptions of incriminating evidence" may be permissible.). As long as such statements are not accompanied by any "threats or other compelling pressure" or in a manner that constitutes a "plea to conscience," they do not amount to interrogation. *Id.* "Moreover, keeping a suspect informed of the progress of the investigation and the status of the charges against him should be encouraged rather than discouraged, so long as the communication is truthful, and is not designed, nor is it likely to elicit, an incriminating response." *Id.* at 765-66.

However, Detective Hopple went on to say:

> And we would obviously still like to meet with you to get your side of the story. It's not our intent to come listen to you tell us lies. If you're going to tell us lies, I think I would just as soon you didn't talk to me. Everybody else has told everything. I'll tell you that. And we were hoping you would do the same. Okay?

9

Detective Hopple's statement clearly constituted a "plea to conscience" and was designed to elicit an incriminating response. *Id.* Moreover, Detective Hopple should have known that such statements were "reasonably likely to elicit an incriminating response." *Innis*, 446 U.S. at 301-02.[5] Therefore, his statements were the functional equivalent of interrogation. Because Detective Hopple, not Defendant, initiated that part of the conversation, interrogation at that point was improper and Defendant's subsequent statements are not admissible.

### C. Waiver

Even if the court were to find that all of Detective Hopple's initial statements following the invocation of the right to counsel fell within the scope of permissible informative comments and that Defendant re-opened the dialogue,[6] Defendant's statements would not be admissible because the prosecution cannot establish a knowing and intelligent waiver of the right to counsel. Even where the accused initiates conversation, "where reinterrogation follows, the burden remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation." *Bradshaw*, 462 U.S. at 1044. Therefore, where police interrogate a suspect after he invokes his right to counsel, the prosecution must show not only that the suspect re-initiated

---

[5] In addition, Detective Culp told Defendant "what you don't want is to be the one guy holding the bag that everyone's pointing the finger at" and Detective Hopple reiterated later that he was not interested in hearing lies. These statements similarly constitute interrogation because the police officers should have known that they were "reasonably likely to elicit incriminating statements." *Id.* Because Defendant did not knowingly and intelligently waive his right to counsel, as the court discusses below, such comments were also impermissible interrogation.

[6] Defendant asked "And what would that do for me?" The question would be sufficient to re-open the dialogue because it shows a "willingness and a desire for a generalized discussion about the investigation." *Bradshaw*, 462 U.S. at 1045-46.

conversation, but that the suspect knowingly and intelligently waived that right. *See id.*

The prosecution fails to establish a knowing and intelligent waiver in the instant circumstances. The court must determine whether a waiver is knowing and intelligent under the totality of the circumstances. *Id.* at 1044-45 (citing *Edwards*, 451 at 486 n.9). Although the fact that a suspect re-initiates conversation is relevant, it is not determinative. *See id.* Here, the court has concerns about the context of the conversation in which Defendant asked questions about the investigation and made various statements. As discussed above, the court believes that many of the statements made by the police officers were the functional equivalent of interrogation. Moreover, the substance of the earlier portion of the taped conversation indicates that there was some confusion over whether Defendant understood his right to counsel. It appears to the court that Defendant, who had only recently turned eighteen, was fairly unsophisticated and did not fully grasp the nuances of his right to counsel. The court also notes that the police officers made no effort to confirm whether Defendant was waiving his rights. Rather, Detective Hopple reminded Defendant several times that he had asked for an attorney.[7] In light of all of these circumstances, the court finds that Defendant did not knowingly and intelligently waive his Fifth Amendment right to counsel.

---

[7] The court is disinclined to find that Detective Hopple's reminders establish that Defendant's statements were knowing and voluntary, because the reminders were made intermittently and largely only after Defendant had made incriminating statements in response to statements constituting interrogation.

11

**IV.**        **Conclusion**

      For the foregoing reasons, the court will grant Defendant's motion to suppress.  Accordingly, the court will suppress all statements made by the Defendant after the point at which he unambiguously invoked that right.  An appropriate order will issue.

                                              s/Sylvia H. Rambo
                                              SYLVIA H. RAMBO
                                              United States District Judge

Dated:  April 3, 2006.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 1:05-CR-0423 |
| v. | JUDGE SYLVIA H. RAMBO |
| SHANNON M. SILKNITTER, | |
| Defendant. | |

# **O R D E R**

In accordance with the foregoing memorandum of law, **IT IS HEREBY ORDERED THAT**:

1) Defendant's Motion to Suppress Statements Taken After Invocation of Fifth Amendment Right to Counsel (Doc. 56) is **GRANTED**.

2) All statements made by Defendant to law enforcement officers without counsel present after he invoked his right to counsel are inadmissible.

                                                                s/Sylvia H. Rambo
                                                                 SYLVIA H. RAMBO
                                                                 United States District Judge

Dated:  April 3, 2006.